IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KENNETH J CONTE, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:16-CV-00048-CAN |
| v. | § § | |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability income benefits [Dkt. 1]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED**.

### BACKGROUND

**I.** *Procedural History Of The Case*

On November 11, 2013, Kenneth J. Conte ("Plaintiff") filed his application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 1382c(a)(3), alleging an onset of disability date of October 1, 2013 [TR at 12, 141-51]. Plaintiff's application was initially denied by notice on January 9, 2014, and again upon reconsideration on February 27, 2014, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 82-85, 88-96. The ALJ conducted a hearing on November 18, 2014 ("Hearing"), and heard testimony from Plaintiff and Vocational Expert Suzette Skinner ("Ms. Skinner" or "VE"). *Id.* at 23-59. Plaintiff was represented by counsel at Hearing. *Id.* On December 19, 2014, the ALJ

issued his decision denying benefits, and found Plaintiff not disabled at step five of the prescribed sequential evaluation process (discussed *infra*). *Id.* at 12-18. On January 6, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision, and on November 24, 2015, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 7-8, 1-6.

On January 15, 2016, Plaintiff filed his Complaint with this Court [Dkt. 1]. On April 1, 2016, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 5]. Plaintiff filed his Brief on April 30, 2016 [Dkt. 7]. On May 5, 2016, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 11]. On June 30, 2016, the Commissioner filed her Brief in Support of the Commissioner's Decision [Dkt. 12]. Plaintiff filed his Reply on July 8, 2016 [Dkt. 13].

**II.** *Statement Of Relevant Facts*

*1. Age, Education, and Work Experience*

Plaintiff was born on March 27, 1950, making him sixty-three years old at the time of his alleged onset date, "an individual closely approaching retirement age" [TR at 17, 141]. Plaintiff had at least a high school education. *Id.* at 17. Plaintiff has past relevant work experience as a loan officer, sales representative/hotel and restaurant equipment supplies, and loan interviewer/mortgage. *Id.*

*2. Medical Record Evidence*

*a. Heart Impairments*

Plaintiff has a history of cardiac impairments and surgeries dating back to November 2002, when Plaintiff received a right coronary artery ("RCA") stent following a myocardial infarction. *Id.* at 251, 259. Because of the reoccurrence of cardiac symptoms, Plaintiff was seen as a new

patient at Legacy Heart Center on August 29, 2013.[1]  *Id.*  After an abnormal stress test, Plaintiff was seen at The Heart Hospital at Baylor Plano on October 14, 2013.  *Id.* at 247.  After evaluation by Drs. Nair and Tran, it was determined Plaintiff would benefit from a left heart catheterization to further evaluate his symptoms.  *Id.*  Dr. John Hollowell ("Dr. Hollowell") performed the heart catheterization.  Dr. Hollowell's cardiovascular catheterization comprehensive report documents an estimated ejection fraction of 55%.  Plaintiff's coronary circulation was found to be right dominant.  Plaintiff had small to medium sized left main with a 95% stenosis, and Plaintiff's mid RCA had 100% stenosis at the site of the previous stent.  Lastly, Plaintiff's left subclavian had 70% stenosis in the mid vessel.  *Id.* at 248.  Because of the findings, Dr. David Moore was consulted for coronary bypass grafting ("CABG").  *Id.* at 235.  Plaintiff underwent CABG x 3 the following day, October 15, 2013.  *Id.* at 238-40.

As directed, Plaintiff was seen post-surgery by Dr. Moore's practice, Cardiac Surgery Specialist, on November 15, 2013.  *Id.* at 231. In the impression and recommendations summary from the November 15, 2013 office visit, Dr. Moore reported Plaintiff was "[d]oing well post to be a mobile plaque in the sublavian artery noted at the time of cardiac catheterization.  For this reason, the left internal mammary artery was not utilized for the graft of the LAD. Further assessment of the subclaivian stenosis should be done utilizing a CAT."  *Id.* at 231.  Plaintiff followed up with Dr. Hollowell, as directed, on November 22, 2013.  During that visit Dr. Hollowell's assessment on that date was: CAD (bypass graft); peripheral vascular disease, greater than 75%, lesion in the left subclavian artery without subclavian steal syndrome, watchful waiting; hyperlipidemia; and hypertension.  *Id.* at 245.  On November 26, 2014, Mr. Conte had a

---

[1] Plaintiff also has impairments to his back; however, Plaintiff appeals the ALJ's treatment of Dr. Hollowell's assessment of Plaintiff's heart impairments.  Accordingly, the Court limits its recitation of the facts to the relevant medical history of Plaintiff's heart impairments.

nuclear stress test. *Id.* at 335-72. The results of the stress test showed Plaintiff had a resting ejection fraction of 55-60% and a stress inducted ejection fraction of 55-60%. *Id.* at 343.

Lastly, on December 19, 2013, Dr. Hollowell completed two RFC forms including a specific cardiac RFC form. *Id.* at 282-88. Dr. Hollowell indicated Mr. Conte has permanent limitations, including that: (1) Plaintiff has no work capacity; (2) Plaintiff is "[i]ncapable of even 'low stress' jobs"; (3) Plaintiff is restricted to occasionally lifting ten pounds; (4) Plaintiff would "need to take unscheduled breaks during an 8 hour working day"; (5) Plaintiff could sit, stand, or walk for a maximum four hours in a working day; (6) Plaintiff's impairments would cause him to miss four or more days a month; and (7) Plaintiff has an ejection fraction of 40-45% and still has 100% blockage of his right coronary artery. *Id.* at 283-88.

### b. *State Agency RFC*

The State agency medical consultants reviewed the evidence in January and February 2014 [TR at 66, 76]. On the disability evaluation form dated January 3, 2014, Laurence Ligon, M.D., indicated Plaintiff had the following severe impairments: spine disorders and peripheral vascular arterial disease. *Id.* at 64. Dr. Ligon indicates insufficient evidence prior to the date last insured ("DLI"), and no RFC/MRFC assessments are associated with this claim. *Id.* at 65. The latter disability evaluation form, dated February 24, 2014 and completed by Scott Spoor, M.D., found the same severe impairments, again found no RFC/MRC assessment associated with the claim, and similarly states insufficient evidence prior to the DLI.[2] *Id.* at 68-76.

---

[2] Commissioner avers that "[o]n January 29, 2014, the agency asked Plaintiff's attorneys to help provide Plaintiff's medical records . . . . Yet, Plaintiff's attorneys did not submit Dr. Hollowell's RFC forms until November 4, 2014, nearly a year after the doctor completed them and the agency requested them" [Dkt. 12 at 6]. Accordingly, Commissioner avers that Drs. Ligon and Spoor did not have Dr. Hollowell's RFC forms for their review. *Id.* at 7.

### 3. Hearing Testimony

#### a. Plaintiff's Testimony

At Hearing, Plaintiff testified about his functional limitations. During the summer of 2013, Plaintiff experienced some pain in his chest and between his shoulder blades [TR at 37-38]. Subsequently, Plaintiff discovered that he had an inoperable tumor on his spine between T4 and T5, a slipped disc in his neck, and that he needed a triple bypass surgery on his heart. *Id.* at 38. Plaintiff testified that he has aches in his neck and arms as a result of his tumor, and that some days, he is unable to move. *Id.* at 38-40. Plaintiff testified he had undergone open heart surgery in October 2013. *Id.* at 37. Plaintiff testified that since the triple bypass surgery he still experiences high blood pressure, fatigue, dizziness when he bends over, and discomfort across his chest. *Id.* at 41-42. Plaintiff further testified that his high blood pressure "prevents me from exercising the way I need to." *Id.* at 43. Plaintiff explained that he feels fatigued just about every day and he regularly has to put his feet up for 30 to 45 minutes. *Id.* Plaintiff stated he has a tumor on his spine between T4 and T5 which in inoperable. *Id.* at 38. Plaintiff indicated he was told by his spine doctor that he has a slipped disc in his neck causing pressure on his nerves, which is causing pain down his neck, across his chest, and between his shoulder blades. *Id.* Plaintiff described daily pain in his neck and both arms. *Id.* Plaintiff also stated he cannot sit for more than five minutes without getting up and walking around. *Id.* at 40. Additionally, Plaintiff testified he would take regularly unscheduled breaks five to ten minutes at a time to stand up and walk away from his work station because of the neck pain he was experiencing. *Id.* at 41. Plaintiff explained the pain created problems while working at Cloud Lending before being let go. *Id.* at 40.

> b. *Vocational Expert Testimony*

The Vocational Expert, Suzette Skinner ("VE"), testified that Plaintiff has past work as a loan officer (DOT 186.267-018, sedentary, skilled, SVP 7), sales representative/hotel and restaurant equipment supplies (DOT 275.367-026, light, skilled, SVP 6), and loan interviewer/mortgage (DOT 241.367-018, sedentary, skilled, SVP 6). *Id.* at 53. The VE testified Plaintiff acquired skills in his past work that were transferable. *Id.* at 55. Based on a hypothetical question posed to her, the VE indicated Plaintiff's skills would transfer to only two other occupations: (1) skip tracer with forty jobs in Texas and 675 jobs nationally; and (2) telemarketer with 21,000 jobs in Texas and 246,000 jobs nationally. *Id.* at 54-55. Plaintiff's counsel also examined the VE at Hearing. Plaintiff's counsel asked what would be the maximum tolerance for absences in a given month for the occupations the VE indicated, and the VE testified that an individual would not be able to maintain the jobs she identified if they missed more than one day of work a month. *Id.* at 57.

## III. *Findings Of The ALJ*

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity ("RFC"), age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20

C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the RFC to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

Making the prescribed sequential evaluation, the ALJ first held Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date [TR at 14]. The ALJ then concluded Plaintiff had the severe impairments of coronary artery disease status-post bypass surgery, degenerative disc disease of the cervical spine and a mass in the thoracic spine. *Id.* at step three, the ALJ concluded Plaintiff was not presumptively disabled because his impairments were not severe enough, either singly or in combination, to meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ found at step four Plaintiff had the RFC to perform work at the sedentary level, with some additional limitations.[3] Specifically, the ALJ found:

---

[3] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Sedentary work is defined as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except walking, standing and sitting for four hours each total out of an eight-hour workday, requires a sit/stand option, occasional climbing of ladders, ropes and scaffolds, frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, occasional exposure to fumes and irritants, frequent exposure to temperature extremes, at least frequent attention and concentration for extended periods, at least occasionally responding to work pressures, requires a 15-minute break every two hours, and will miss approximately one day of work per month.

*Id.* at 15. Continuing the step four analysis, using the aforementioned RFC, the ALJ found Plaintiff was unable to perform any of his past relevant work. *Id.* at 17. At step five, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found from the onset date until December 19, 2014, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as skip tracer and telemarketer. *Id.* at 17-18. Thus, the ALJ concluded Plaintiff was not disabled from October 1, 2013 through December 19, 2014. *Id.* at 18.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by giving only some weight to the opinion of treating cardiologist Dr. Hollowell, and in making contradictory findings regarding the severity of Mr. Conte's physical limitations without another medical opinion or medical testimony on file; (2) whether the ALJ erred by finding Plaintiff not disabled despite a "marked" limitation in dealing with changes in work setting; and (3) whether the ALJ's credibility determination of Plaintiff's testimony lacks support by the record. The Court finds Plaintiff's first issue requires remand in this case, as discussed below.

### 1.  *Requirements for Giving Weight to Treating Physician*

The treating physician rule provides that the opinion of a claimant's treating physician (such as Dr. Hollowell here) is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[4] "The opinion of a

---

[4] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the Court's reference to subsection (d)(2) refers to the factors now present at subsection (c)(2) of

ORDER − Page 9

specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103 (2000). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Id.* at 453. As stated in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 455-56 (internal citations and quotation marks omitted); *see, e.g.*, *Greenspan*, 38 F.3d at 237.

In addition, "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," § 404.1520b(c) provides "various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence." *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *8 (N.D. Tex. Sept. 30, 2015).

---

20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006), *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012).

## 2. *Factors to be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight*

SSA regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and lists the factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2). Thus, where an ALJ finds a treating source is not entitled to "controlling weight," the SSA regulations specifically require consideration of six factors set forth in 20 C.F.R. § 404.1527(c) (hereinafter "the relevant factors"): (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. § 404.1527(c)(2) (listing factors to consider); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors); *Burgess v. Astrue*, No. CA C-10-371, 2011 WL 1828377, at *17 (S.D. Tex. Apr. 21, 2011), *report and recommendation adopted*, No. CIV.A. C-10-371, 2011 WL 1827241 (S.D. Tex. May 11, 2011) (finding ALJ must consider "each and every one" of the six factors in 20 C.F.R. § 404.1527). The Court must also consider if the error is a harmless error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Notably, *Newton* does not require analysis of the aforementioned factors when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." 209 F.3d at 458.

## 3. *Weight Given to Dr. Hollowell*

Here, Plaintiff asserts that the ALJ erred by giving only "some weight" to Plaintiff's treating physician. Specifically, Plaintiff alleges that the ALJ failed to include in the RFC the limitations described by Plaintiff's treating physician, Dr. Hollowell, a cardiology specialist,

including that: (1) Plaintiff has permanent limitations from coronary artery disease, hypertension, and peripheral vascular disease; (2) Plaintiff is incapable of even "low stress jobs; (3) Plaintiff is restricted to occasionally lifting ten pounds, and sitting, standing, or walking for a maximum four hours; (4) Plaintiff's impairments would cause him to miss four or more days a month; and (5) Plaintiff has an ejection fraction of 40-45% and still has 100% blockage of his right coronary artery [Dkt. 7 at 7-8]. The ALJ expressly rejected Dr. Hollowell's lifting restrictions, limitations from all stress, and unscheduled break requirements, asserting they "seem to be exaggerated," and opined that the "claimant has good cardiovascular, respiratory and musculoskeletal systems, which would not require this level of limitation" [TR at 16]. Plaintiff contends such error resulted in an inaccurate RFC, prejudicing the outcome of the ALJ's step-five analysis.

The ALJ's Decision summarizes the contents of Dr. Hollowell's December 19, 2013 Residual Functional Capacity Questionnaire contained in Exhibit 8F [TR at 282-88] as follows:

> John S. Hollowell, treating physician, gave the medical opinion that the claimant suffered with permanent limitations of not engaging in even low stress jobs, sitting, standing and walking no more than four hours per eight-hour workday, requiring a sit/stand option at will, requiring unscheduled breaks every 30 minutes lasting 15 minutes, occasionally lifting and carrying ten pounds, avoiding concentrated exposure to extreme heat and all exposure to cigarette smoke and poor ventilation. Dr. Hollowell estimated that the claimant would be absent from work more than four days per month due to his conditions and treatment (Ex. 8F).

*Id.* at 16. The ALJ went on to state:

> Dr. Hollowell's opinion is given some weight because his postural and environmental limitations are well supported by the medical signs from the record as a whole. However, his lifting restrictions, limitations from all stress and unscheduled break requirements seem to be exaggerated. The claimant has good cardiovascular, respiratory and musculoskeletal systems, which would not require this level of limitation.

*Id.* In his decision, the ALJ omitted reference to and gave no reasons whatsoever for excluding from Plaintiff's RFC the finding of Dr. Hollowell that Plaintiff would need to be absent from work more than four days per month due to his conditions and treatment. *Id.*

In response, the Commissioner argues the ALJ did not err in failing to accord controlling weight to Dr. Hollowell because "[t]he medical evidence shows that the month after his alleged onset date and heart surgery, Plaintiff was doing well" [Dkt. 12 at 9]. Indeed, the Commissioner points out that the ALJ found Plaintiff's "recovery was good with good cardiovascular and respiratory systems" after Plaintiff's CABG x 3 [TR at 16]. The Commissioner argues the ALJ therefore found that Dr. Hollowell's opinions were inconsistent with other medical record evidence [Dkt. 12 at 8].

The ALJ did not include these reasons or explanation in his determination. But even if the ALJ properly found Dr. Hollowell's opinions not entitled to controlling weight, such finding merely clears the first hurdle established by the regulations. Once the ALJ makes that finding, he must then further make the detailed analysis required by 20 C.F.R. § 404.1527(c) unless there is reliable first-hand medical evidence from a treating or examining physician controverting Plaintiff's treating physician; failure to do so is error.

Dr. Hollowell is the only treating or examining physician in this case. The Commissioner does not dispute this fact or argue to the contrary. The only other medical source opinions are from state agency medical consultants, Dr. Laurence Ligon and Dr. Scott Spoor, each of whom opined that Plaintiff's conditions were not severe and/or that there was insufficient evidence to determine the severity of Plaintiff's conditions [TR at 16]. The ALJ, however, also gave these opinions "little weight because the laboratory findings and medical signs in the medical record support that the claimant has functional limitations in his ability to engage in work activities." *Id.* at 16-17.

Under the facts of this case, the regulations required the ALJ to analyze the opinions of the treating physicians in the detailed manner set out in § 404.1527(c) and addressed in *Newton*. The

opinions of the agency consultants provide no basis to bypass the detailed analysis required by the regulations. It is readily apparent that the ALJ did not recite the six factors, although his decision reflects consideration of some of them. Even the Commissioner does not argue that the ALJ considered each of the § 404.1527(c) factors. Indeed, the Commissioner's argument that the ALJ "thoroughly addressed the doctor's medical notes and explained why the doctor's RFC finding deserved only 'some weight'" includes only a discussion of two factors: "By acknowledging that the doctor was a treating physician, the ALJ considered the nature of the treatment relationship (Tr. 16). 20 C.F.R. § 404.1527(c)(2)(i). He found that the medical evidence supported portions, but not all of Dr. Hollowell's opinion (Tr. 16). 20 C.F.R. § 404.1527(c)(3)" [Dkt. 12 at 7]. By the Commissioner's own omission, the ALJ did not address all of the factors. The ALJ did not directly consider Dr. Hollowell's examining relationship with Plaintiff, the length of the treatment relationship and frequency of examination, consistency of the medical opinion with the record, or Dr. Hollowell's specialization. Consequently, the face of the determination does not reflect that the ALJ gave consideration to each of the § 404.1527(c) factors. *See Patino v. Colvin*, No. 3:15-CV-618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (remanding where ALJ omitted factors 2 and 5); *Smith v. Colvin*, No. 1:14CV195-SA-DAS, 2016 WL 762693, at *9-15 (N.D. Miss. Feb. 25, 2016) (remanding where ALJ did not consider all factors). As in recent cases *Smith* and *Patino*, an analysis of some of the factors, but omission of others, does not comply with *Newton*'s requirement "that an ALJ is required to consider *each* of the § 404.1527(c) factors before declining to give any [or little] weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456 (emphasis added); *Patino*, 2016 WL 1664912, at *6-8 (remanding where ALJ omitted factors); *Smith*, 2016 WL 762693, at *9-15 (remanding where ALJ did not consider all factors); *Rodriguez v. Colvin*, No. 2:14-CV-00093, 2015 WL 5637545, at *8 (N.D. Tex. Sept.

3, 2015), *report and recommendation adopted sub nom. Rodriquez*, 2015 WL 5666202 (remanding where ALJ omitted factors four through six). Dr. Hollowell was the only treating physician in this case and his opinions were uncontroverted by another treating or examining physician. Here, the ALJ should have considered each of the § 404.1527(c) factors before declining to give controlling weight to Dr. Hollowell's opinions. The ALJ erred in such failure.

### 4. *Harmless Error*

Moreover, the ALJ's failure to conduct the weight analysis under 20 C.F.R. § 404.1527(c) is prejudicial in the instant case. *Newton*, 209 F.3d. at 453-58 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."); *Patino*, 2016 WL 1664912, at *5 (finding error was not harmless where it was "conceivable, if not probable" that the ALJ would have reached a different conclusion had he considered all 20 C.F.R. § 404.1527(c) factors). Had the ALJ given controlling weight to the March 10, 2015 opinion of Dr. Hollowell, the ALJ may have ruled that Plaintiff was limited to sedentary or less than sedentary work, and Medical-Vocational Rule 201.14 may have directed a different decision; the ALJ cannot give less than controlling weigh absent completion of the requisite analysis. On the record before the Court, the failure to conduct the detailed analysis is not harmless error.

In addition, Dr. Hollowell is the only treating source related to these limitations; there is no contrary opinion from a treating source in the record. Regardless of the basis for the ALJ's RFC assessment, it is clear from his decision that he rejected specific medical opinions of Dr. Hollowell that Plaintiff's impairments require him to not engage even in low stress jobs, occasionally lift and carrying ten pounds, take unscheduled breaks every thirty minutes lasting fifteen minutes, and miss four days of work a month. And rejecting medical opinions when there

is no contrary opinion from a treating or examining source necessarily usurps the physician's role. *See Newton v. Apfel*, 209 F.3d 448, 453-58 (5th Cir. 2000). "Neither the courts nor ALJs may rely on their own medical opinions as to the limitations presented by a claimant's impairments." *Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *11 (N.D. Tex. Feb. 24, 2014) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (per curiam)) (reversing denial of benefits when the ALJ impermissibly relied on his own medical opinions as to limitations presented by the claimant's impairments). It is reversible error for an ALJ to substitute his own medical opinions for those of a treating physician. *Evans v. Colvin*, No. 1:14-CV-202-BL, 2015 WL 9685552, at *3 (N.D. Tex. Dec. 8, 2015), *report and recommendation adopted*, No. 1:14-CV-202-C, 2016 WL 112645 (N.D. Tex. Jan. 8, 2016).

Like *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See* 209 F.3d at 458. And, like *Newton*, this is not "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.* The ALJ did not reject the medical opinions of Dr. Hollowell due to any inconsistency with any other medical opinion, but rather seemingly based on his own belief that the limitations contained within Dr. Hollowell's RFC Questionnaire "seem to be exaggerated" [TR at 16]. The ALJ goes on to say that Plaintiff "has good cardiovascular, respiratory and musculoskeletal systems, which would not require this level of limitation." *Id.* No support exists in the record for this statement. The ALJ appears to have relied on his own medical opinion to find certain limitations unsupported. That lies outside the role of an ALJ. And to the extent the ALJ perceived a need for an additional or updated medical opinion, he took no steps to secure such opinion from any medical expert.

Notably, when counsel for Plaintiff added a limitation that would require the hypothetical claimant to be absent from work more than a day a month (for doctor's appointments), a limitation the ALJ wholly omitted from his determination, the VE testified that such individual would be unable to do the jobs the VE had identified in response to the initial hypothetical [TR at 57]. This additional questioning shows how altering the limitations caused by Plaintiff's impairments in the instant case also could ultimately alter the outcome at Step 5. *See Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015) (finding failure to undergo a detailed analysis of the factors when there were no other treating or examining sources controverting treating physician's opinions because treating physician opined that plaintiff's physical conditions would cause plaintiff to miss more work than allowed by the jobs identified by the vocational expert).

The Court finds that the ALJ improperly considered and weighed the opinions of Plaintiff's treating physician. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 404.1527. Had he conducted that analysis and properly considered and weighed the opinions of Dr. Hollowell, a realistic possibility exists that he would have included additional limitations in his hypothetical to the VE. Consequently, the procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Plaintiff's substantial rights have been affected by the consideration and weight accorded to the opinions of the treating physician by the ALJ. This procedural error is not harmless and warrants remand for further consideration on the medical opinion of Plaintiff's treating physician.[5]

---

[5] Because the Court finds that Plaintiff's first grounds for appeal warrants remand, the Court need not consider the other grounds on which Plaintiff appeals. *See Davidson v. Colvin*, 164 F. Supp. 3d 926, 945 n.12 (N.D. Tex. 2015) ("Because this error requires remand and the ALJ's consideration of Dr. Merkin's opinion may affect the remaining issues, it is unnecessary to reach those issues.").

## CONCLUSION

Based on the foregoing, the Court finds this case should be remanded for further review so that the Commissioner may further consider the opinions of Plaintiff's treating physician, Dr. Hollowell, in its disability determination.

Pursuant to the foregoing, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this opinion.

**SIGNED this 16th day of March, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE